# NO. 12-16-00010-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF A. H.,* | § | *APPEAL FROM THE* |
| *A CHILD* | § | *COUNTY COURT AT LAW NO. 2* |
| | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A.W. appeals the termination of her parental rights. In two issues, she challenges the trial court's termination order. We affirm.

## BACKGROUND

A.W. is the mother of A.H., born February 27, 2014.[1] On March 30, 2015, the Department of Family and Protective Services (the Department) filed an original petition for protection of the child, for conservatorship, and for termination of A.W.'s parental rights. The Department was appointed temporary managing conservator of the child, and A.W. was appointed temporary possessory conservator with limited rights and duties.

At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that A.W. had engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), (N), and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between A.W. and A.H. is in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between A.W. and A.H. be terminated. This appeal followed.

---

[1] The trial court ordered that the parent-child relationship between the alleged father, K.H., and A.H. be terminated. The father is not a party to this appeal.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2015); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2015); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2015); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm

belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SECTION 16.001(b)(1)(E)

In her first issue, A.W. contends the evidence is legally and factually insufficient to terminate her parental rights pursuant to Texas Family Code Section 161.001(b)(1), subsection (E).

### Applicable Law

The court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West Supp. 2015). The specific danger to the child's well being need not be established as an independent proposition, but may instead be inferred from parental misconduct. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.J.*, 911 S.W.2d at 440. Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Finally, the need for permanence is a paramount consideration

for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.—Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d at 200.

"Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533; *In re D.M.*, 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.). It is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Boyd*, 727 S.W.2d at 533; *In re J.J.*, 911 S.W.2d at 440. Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d at 811. Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well being is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634.

A parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). A parent's repeated engagement in illegal drug activity or repeatedly associating with known criminals after agreeing not to do so in a service plan for reunification with her child may be considered in an analysis of whether clear and convincing proof exists of voluntary, deliberate, and conscious conduct that endangered the well being of her child. *See In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.). As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d at 739.

If a parent abuses or neglects the other parent or a child, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct. *In re C.J.F.*, 134 S.W.3d 343, 351 (Tex. App.—Amarillo 2003, pet. denied). Endangering conduct is not limited to actions directed towards the child. *Boyd*, 727 S.W.2d at 533. It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage. *See id.* (stating that although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the

4

parent's conduct be directed at the child or that the child actually suffers injury); *see also* **In re M.N.G.**, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (holding that courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate).

**The Evidence**

Lauren Young, a caseworker with the Department, testified that the Department provided family based safety services for A.W. for about a year after A.H. was born. A.W.'s drug use was the basis for the Department's providing services. A.W. tested positive for methamphetamine in February 2015. The Department removed A.H. and placed her with fictive kin. Young said that after the adversarial hearing, A.W. agreed to the Department's being appointed as A.H.'s temporary managing conservator, and A.H. was placed with her current foster family.

A.W. testified that, on May 13, 2015, she and another individual were in a vehicle and stopped by law enforcement. She testified that there were controlled substances in the vehicle, i.e., methamphetamines, and admitted that these substances were hers. A.W. stated that she was arrested, and confined, for charges relating to five *capias pro fines* from the Gun Barrel City Police Department, failure to identify as a fugitive with intent to give false information, theft of property by check, credit card or debit card abuse, and forgery of a financial instrument, a third degree felony. She stated that she paid the hot check and agreed to a plea bargain for the failure to identify charge. She received five years of deferred adjudication community supervision for the forgery charge and three years of deferred adjudication community supervision for the credit or debit card abuse charge. She admitted that she was not current with her payments for fees or fines. A.W. was released from jail on August 14, 2015.

A.W. has a long history with methamphetamine. She has two older children, and her drug use was the basis for the Department's providing her with services in those two cases. In both cases, A.W. voluntarily relinquished her parental rights. Young said A.W. "refuse[d] flat out" to go to inpatient drug treatment and stated that she could do it on her own. A.W. acknowledged that she refused to go to inpatient drug rehabilitation after she was released from jail. Also, she admitted that she was still using methamphetamine in May 2015, and understood that her drug use was the Department's problem with all three of her children.

A.W. did not work her family plan of service. Her service plan included substance abuse counseling, a drug abuse assessment, a psychological evaluation including following its

5

recommendations, individual counseling, and parenting classes. A.W.'s service plan also stated that she needed to obtain a home and employment. Young testified that A.W. participated by telephone in a permanency conference after she was released from jail, and was again informed of what the Department expected her to do and the services that she was required to complete.

Young stated that at the time of trial, A.W. was living in Kilgore. She informed A.W. of the services offered to her in Kilgore, but A.W. did not take advantage of any of them. Young believed that A.W. completed the East Texas Counsel on Alcohol and Drug Abuse (ETCADA) form, but did not know if she followed through. She stated that as of the trial date, A.W. had not started any of the services in her service plan, including psychological testing, drug rehabilitation, or parenting classes. Young testified that A.W. has done nothing to show that she is trying in any way to have her child returned to her.

According to A.W., she received the telephone number and address of the counselor and understood that it was her responsibility to set up those sessions. However, she said, she was unable to do so because no one returned her telephone calls or messages. She said the same thing occurred when she attempted to set up parenting classes. A.W. testified that she completed the ETCADA examination over the telephone and stated that their recommendation was to continue attending Narcotics Anonymous. She has been doing so since her release from jail, but did not have her sign-in sheets. Then, she said that she had not been going to Narcotics Anonymous regularly because of her work schedule.

A.W. has not maintained contact with A.H. or seen her since A.W.'s release from jail in August 2015. Young stated that she set up visitations between A.W. and A.H. on September 8, October 19, November 23, and December 7. According to Young, she informed A.W. of each visit by telephone or text message, but A.W. did not appear at a single visitation. On each occasion, A.W. was supposed to meet a Department worker at 7:30 a.m. in Athens, and the worker was to transport her to the visitation in Waco. She claimed that she had transportation problems or had to work. A.W. admitted that she did not call Young prior to the visitation that she would not be attending. However, she testified that she drove one of the men that she lived with to the doctor in August 2015, but could not arrange for transportation to get to Athens.

A.W. had employment at a fast food restaurant at the time of trial and was renting a house. But, she could not provide a lease agreement, and none of the workers had visited her. Moreover, she did not maintain a stable environment after her release from jail. A.W. testified

6

that when she was released from jail, she lived with her drug dealer. She claimed that she did not have any place to live other than with her dealer. A.W. said she did not know that she could have gone to a woman's shelter or called her caseworker. Later, she moved to Kemp with a man that she had known for a week after she was introduced to him by her tattoo artist. She did not know that he had a criminal history, but it would not surprise her that he had an extensive criminal history. Thereafter, A.W. lived in Kilgore with another man whom she had known since May 2015. She knew that he had a criminal history including possession of marijuana. She did not believe it was a good choice to live with two men with whom she had no prior relationship. Nor did she believe that these places would have been safe for her child. She is not sure what she would have done with A.H. if she had still been in her care.

**Conclusion**

Viewing the evidence in the light most favorable to the finding, the trial court could have determined that A.W. had an extensive, and unresolved, drug problem, that she was not protective of A.H., that she had a criminal history that seemed to be unresolved, that she chose to live with men she did not know and who had criminal histories, that she did not maintain contact with A.H., and that she did not work any of the services necessary to enable her to have A.H. returned to her. Therefore, the trial court could have concluded that A.W. engaged in conduct that endangered A.H.'s physical or emotional well being. *See In re T.N.*, 180 S.W.3d at 383; *In re M.N.G.*, 147 S.W.3d 536; *In re R.W.*, 129 S.W.3d at 739.

Here, there is no disputed testimony or other evidence. Thus, the evidence is such that a reasonable trier of fact could have formed a firm belief or conviction that A.W. engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangered her physical or emotional well being. Therefore, we hold that the evidence is legally and factually sufficient to support termination of A.W.'s parental rights under Section 161.001(b)(1)(E). Accordingly, we overrule A.W.'s first issue regarding termination under Section 161.001(b)(1)(E). [2]

---

[2] Because we have concluded that the evidence is legally and factually sufficient to support termination of A.W.'s parental rights under subsection (b)(1)(E), we need not address her first issue regarding subsections (b)(1)(D), (b)(1)(N), and (b)(1)(O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1); TEX. R. APP. P. 47.1.

In A.W.'s second issue, she contends that the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the best interest of the child. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. *Id.* However, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d at 814. The *Holley* test focuses on the best interest of the child, not the parent's best interest. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). We apply the *Holley* factors below.

## The Evidence

The evidence above showed that A.W. had a long history of methamphetamine use, refused to participate in any drug rehabilitation, did not participate at all in the family plan of service offered to her after her release from jail, did not maintain any contact with A.H., had an apparently unresolved criminal history, and did not maintain a stable environment after she was released from jail.

The evidence also shows that A.W. had two older children and a long history with the Department. Debbie Burnett, a CASA volunteer, stated that she was the volunteer for A.H. and her two older siblings. According to Burnett, A.W.'s history centered around her methamphetamine use and was the reason A.H.'s siblings were taken into care by the Department. One sibling also suffered from neglect. She said that throughout the pendency of A.W.'s oldest child's case, A.W. was offered a service plan, but she did not comply. A.W. was given more time to work services, i.e., approximately one and one-half years. Then, Burnett said, A.W. relinquished her parental rights to her oldest child. Burnett testified that the

8

Department told A.W. that relinquishing her parental rights would not "shut the door" on an opportunity to have her second child returned. A.W. had been given another service plan after she gave birth to her second child. However, Burnett said, A.W. failed to complete her service plan for her second child, and she voluntarily relinquished her parental rights to him.

Young stated that both of A.W.'s older children were taken into care by the Department and that A.W. failed to complete her family plan of service in both cases. She stated that the Department has been in A.W.'s life "[p]retty much nonstop" for the last few years and has continued to offer services. According to Young, A.W. did not successfully complete services in her other children's cases, noting that she would "go in off and on." Young believed that A.W. was asked to do some kind of substance abuse program in her two older children's cases, but she did not complete those programs.

Young testified that A.H. is currently in a foster home with a sibling. Young and Burnett agreed that A.H. is very bonded to the foster parents and her sibling. The foster parents adopted A.H.'s older sibling, and are willing to adopt A.H. Young testified that A.W. has not seen A.H. since before she was removed at the beginning of May 2015. When A.W. was in jail, she sent one letter to A.H., but has not sent any other letters, cards, or gifts to A.H. in order to maintain a relationship with her. Young and Burnett believed it was in A.H.'s best interest to terminate A.W.'s parental rights.

## Conclusion

Viewing the above evidence relating to the ***Holley*** factors in the light most favorable to the finding, we hold that a reasonable fact finder could have formed a firm belief or conviction that termination of A.W.'s parental rights is in the best interest of the children. Again, there is no disputed testimony or other evidence. Therefore, the evidence is such that a reasonable trier of fact could have formed a firm belief or conviction that termination of A.W.'s parental rights is in the best interest of the child. Accordingly, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of A.W.'s parental rights is in the best interest of the child. We overrule A.W.'s second issue regarding the best interest of the child.

## DISPOSITION

Having overruled A.W.'s first and second issues, we *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered July 12, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 12, 2016**

**NO. 12-16-00010-CV**

**IN THE INTEREST OF A. H., A CHILD,**

Appeal from the County Court at Law No. 2

of Henderson County, Texas (Tr.Ct.No. FAM15-0226-CC2)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*